1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

RAYMOND B. GUTHRIE,

Civil No.    11-cv-0911-L (DHB)

11

Plaintiff,

**REPORT AND RECOMMENDATION
FOLLOWING EVIDENTIARY
HEARING RE: SANCTIONS AND
SERVICE OF PROCESS**

12

v.

13

JD ENTERPRISE & FINANCIAL SERVICES,
*et al.*,

14

Defendants.

15

16          On April 18, 2012, the Honorable M. James Lorenz referred this matter to Magistrate Judge

17   David H. Bartick to conduct an evidentiary hearing to determine (1) whether Defendants JD Enterprise

18   & Financial Services ("JD Enterprise") and Joseph Dassa's request for sanctions should be imposed on

19   Plaintiff Raymond B. Guthrie or his counsel, and (2) whether Plaintiff properly served the summons and

20   complaint on February 20, 2012, and to produce a Report and Recommendation on the Court's findings.

21   (ECF No. 12.)  Based upon a thorough review of the pleadings and evidence presented to the Court, and

22   for the reasons set forth below, the undersigned Magistrate Judge respectfully RECOMMENDS that (1)

23   Defendants' request for sanctions be DENIED and (2) the District Judge find that service of process on

24   Defendants JD Enterprise and Mr. Dassa was properly effectuated on February 20, 2012.

25                                            **I.  PROCEDURAL BACKGROUND**

26          On April 28, 2011, Plaintiff filed his complaint against Defendants JD Enterprise, Mr. Dassa,

27   and Joe Willis (collectively "Defendants") alleging violations of the Fair Debt Collection Practices Act,

28   15 U.S.C. § 1692 *et seq.*  (ECF No. 1.)  After over nine months of inactivity, the Court issued a notice

1   of hearing for dismissal for want of prosecution under Civil Local Rule 41.1 and Federal Rule of Civil

2   Procedure 4(m).  (ECF No. 3.)  Shortly thereafter, on February 23, 2012, the summons were finally

3   returned and executed as to JD Enterprise and Mr. Dassa.  (ECF Nos. 4, 5.)  As a result, on February

4   24, 2012, the Court vacated the hearing for dismissal for want of prosecution.  (ECF No. 6.)  To date,

5   there is no proof of service on record for Mr. Willis, nor has Plaintiff introduced any evidence or

6   argument that Mr. Willis has been served.

7          On March 8, 2012, Defendants JD Enterprise and Mr. Dassa filed a motion to quash service and

8   dismiss the complaint under Rule 12(b)(5) based on allegedly defective and untimely service.  (Defs.'

9   Mot. to Dismiss, ECF No. 7.)  Defendants also request that the Court impose monetary sanctions on

10  Plaintiff and his counsel for Plaintiff's purported bad faith conduct based on Plaintiff's alleged filing

11  of false proofs of service.  (Defs.' Mot. to Dismiss at 7:25-28.)

12         On April 18, 2012, this matter was referred to the Magistrate Judge to conduct an evidentiary

13  hearing to determine (1) whether Defendants' request for sanctions should be imposed on Plaintiff or

14  his counsel, and (2) whether Plaintiff effectively served the summons on February 20, 2012, and to

15  produce a Report and Recommendation on the Court's findings.  (ECF No. 12.)[1]  An evidentiary hearing

16  was conducted on May 15, 2012.  (ECF No. 16.)

17                                   **II.  ANALYSIS**

18         The Court finds that a finding as to whether service of summons was completed is a necessary

19  component of the Court's analysis of Defendants' request for sanctions.  Accordingly, the Court's first

20  inquiry addresses whether Plaintiff properly served the summons and complaint on JD Enterprise and

21  Mr. Dassa on February 20, 2012.  The Court's second inquiry addresses whether sanctions against

22  Plaintiff and his counsel are appropriate.

23  **A.     Service of Process**

24         1.      Legal Standard

25         Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure.  "The

26  provisions of Rule 4 delineating the manner of service are construed liberally to uphold service."

27  _____

28         [1]The District Judge held Defendants' motion to dismiss in abeyance until resolution of the issues referred to the Magistrate Judge.

*Collagen Nutraceuticals, Inc. v. Neocell Corp.*, No. 09-cv-2188-DMS (WVG), 2010 U.S. Dist. LEXIS 98228, at *2 (S.D. Cal. Sept. 17, 2010) (citing *Crane v. Battelle*, 127 F.R.D. 174, 177 (S.D. Cal. 1989)). "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "[e]ven if the defendant receives actual notice, the manner of service of process must substantially comply with *Rule 4* requirements." *Bisq'ettes Ceramic Tile, Inc. v. Skinner*, No. C-00-00481 EDL, 2000 U.S. Dist. LEXIS 22674, at *20 (N.D. Cal. Sep. 25, 2000).

"When service of process is properly challenged, the party on whose behalf service was made, the plaintiff, has the burden to establish its validity." *Solorio v. Astrue*, No. 07-cv-0508-H (POR), 2008 U.S. Dist. LEXIS 98604, at *4-5 (S.D. Cal. Dec. 5, 2008) (citing *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)). The Ninth Circuit holds "that a signed return of service constitutes prima facie evidence of valid service which can be overcome only by ***strong and convincing evidence***." *SEC v. Internet Solutions for Business Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007) (emphasis added); *see also RCR Plumbing and Mech., Inc. v. Ace Am. Ins. Co.*, No. EDCV 10-00995 VA(DTBx), 2011 U.S. Dist. LEXIS 62689, at *15 (C.D. Cal. June 3, 2011) ("Unless a defect in service is shown on the face of the return, a motion to dismiss under Rule 12 requires defendants to produce affidavits, discovery materials, or other admissible evidence establishing the lack of proper service.").

2.   <u>Analysis</u>

In the instant case, Plaintiffs filed proofs of service of summons on Defendants JD Enterprise and Mr. Dassa.  (ECF Nos. 4, 5.)  Plaintiff's proofs of service state that David Anthony Pinon, a registered process server employed by Southwest Legal Services, personally served Mr. Dassa in his individual capacity and as an authorized representative of JD Enterprise at 8:15 a.m. on February 20, 2012 at 16202 Marlington Drive, Whittier, California 90604.  (*Id.*)  The proofs of service describe the individual served as a Caucasian male, approximately 30 to 35 years of age, 5' 8" tall, weighing 195 pounds, and with brown hair.  (*Id.*)  Pursuant to Ninth Circuit law, the Court finds that these proofs of service constitute prima facie evidence of valid service on JD Enterprise and Mr. Dassa.  Accordingly,

Case 3:11-cv-00911-L-DHB   Document 19   Filed 06/08/12   PageID.260   Page 4 of 9

Plaintiff has satisfied his initial burden of establishing the validity of service which can only be overcome if Defendants present strong and convincing evidence of invalidity. For the reasons set forth below, the Court finds that Defendants cannot make this showing, and that service was indeed valid.

Initially, Defendants rely on Mr. Dassa's sworn declaration that he was never served. (Decl. of Joe Dassa at ¶ 3, ECF No. 7-3.) However, mere allegations that process was not served does not amount to the "strong and convincing evidence" required to rebut the validity of a filed proof of service. *See Collagen*, 2010 U.S. Dist. LEXIS at *3-4; *J&J Sports Productions, Inc. v. Barksdale*, No. CIV S-11-2994 JAM CKD PS, 2012 U.S. Dist. LEXIS 52583, *14 (E.D. Cal. Apr. 13, 2012) ("The only evidence contradicting plaintiff's proof of service is defendant['s] own declaration, which is insufficient to overcome the prima facie evidence of valid service."); *craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 513 (N.D. Cal. Nov. 22, 2011) ("[W]here a plaintiff has filed a signed return of service, courts regularly find that a self-serving declaration that a person was not served is insufficient to overcome this prima facie evidence of valid service.").

In addition to Mr. Dassa's testimony, Defendants maintain they "have conclusive evidence that the proof(s) of service were clearly manufactured, falsified, and perjured." (Defs.' Mot. to Dismiss at 4:16-17.) Specifically, Defendants contend that the evidence demonstrates that Mr. Dassa was not personally served on February 20, 2012 because (1) the physical description on the proofs of service does not match Mr. Dassa's physical description and (2) the videotape and still images of Mr. Dassa's surveillance footage show that the summons and complaint were left at the door to Mr. Dassa's residence and not personally delivered to any person. (Defs.' Mot. to Dismiss at 4:1-6.)

a. *Physical Description*

As stated above, the proofs of service describe the individual served by Mr. Pinon as a Caucasian male, approximately 30 to 35 years of age, 5' 8" tall, weighing 195 pounds, and with brown hair. (ECF Nos. 4, 5.) However, as Defendants note in their motion to dismiss and as was evident to the Court during the evidentiary hearing, Mr. Dassa's true physical description is significantly different. Indeed, Mr. Dassa appears to be approximately 6' 3" tall and weigh significantly more than the proofs of service

/ / /

/ / /

- 4 -                                                                                            11cv911-L (DHB)

1    depict.[2]  (Tr. of Evidentiary Hr'g ["Transcript"] at 27:19-22, May 15, 2012, ECF No. 18;  Decl. of Joe

2    Dassa at ¶ 5.)  However, evidence that a proof of service contains inaccurate physical description is not,

3    in and of itself, strong and convincing evidence to establish the invalidity of the proof of service.  *See*

4    *Collagen*, 2010 U.S. Dist. LEXIS at *5-6 (providing a recent photo showing that party looked physically

5    different from what the proof of service indicated is insufficient to demonstrate strong and convincing

6    evidence to rebut the process server's declaration).  Moreover, despite the inconsistencies, the Court

7    finds that Mr. Pinon's ability to accurately depict the physical description of the individual served was

8    due in large part to Mr. Pinon's limited ability to obtain an accurate description on the morning in

9    question.  Specifically, Mr. Pinon testified that after responding affirmatively to the name "Joe Dassa,"

10   Mr. Dassa opened the door for only five to ten seconds before slamming it closed in Mr. Pinon's face,

11   and that Mr. Pinon spent a portion of that time looking down at his legal documents.  (Transcript at

12   7:22-8:2, 11:10-12-2.)  Moreover, Mr. Pinon testified that he only saw the side of Mr. Dassa's face

13   before the door was slammed shut.  (Transcript at 12:10-21.)  Given the brief period of time in which

14   Mr. Pinon observed Mr. Dassa on the morning of February 20, 2012, the Court finds that the

15   inconsistencies in physical description do not amount to strong and convincing evidence sufficient to

16   rebut Plaintiff's prima facie showing of proper service.

17              *b.    Surveillance Footage*

18         Defendants also presented to the Court surveillance footage from Mr. Dassa's home security

19   system, taken the morning of February 20, 2012.  It is this surveillance evidence that, according to

20   Defendants, conclusively establishes that Mr. Dassa was never served.  However, as discussed below,

21   Mr. Dassa and Mr. Pinon each tell a different version of what occurred at Mr. Dassa's residence on the

22   morning of February 20, 2012.  Despite Defendants' contention that the video surveillance evidence

23   constitutes "conclusive evidence" that Mr. Pinon submitted false proofs of service, the video

24   surveillance does nothing more than confirm the latter portion of Mr. Pinon's testimony.

25

26         [2]Mr. Dassa stated in his declaration and during the evidentiary hearing that he weighs 340
     pounds.  However, Mr. Dassa's drivers license (Decl. of Joe Dassa Ex. D, ECF No. 7-5) indicates that
27   he weighs 285 pounds.  Mr. Dassa has made no effort to explain this discrepancy.  In fact, Defendants
     appear to concede that Mr. Dassa weighs 285 pounds.  (*See* Defs.' Reply at 2:26-3:3, ECF No. 10.)  In
28   any event, it is clear that Mr. Dassa weighs significantly more than the 195 pounds stated on the proofs
     of service.

1    Mr. Pinon testified that after staking out Mr. Dassa's residence from 5:00 a.m. to 8:00 a.m. on

2    the morning of February 20, 2012,[3] and having seen no activity at the residence, Mr. Pinon approached

3    the door and knocked.  (Transcript at 7:17-21.)  According to Mr. Pinon:

4
5              A couple second later, somebody came to the door, asked who it was.  I said I had a
               delivery for Joe Dassa.  He then opened the door, and I said, Joe Dassa?  He said, yes.
               Once I lifted my worksheet up to show what I had, I told him I had legal documents,
6              and he slammed the door in my face.

7    (Transcript at 7:22-8:2.)  Following this encounter, Mr. Pinon left the legal documents at the front door

8    after stating to Mr. Dassa through the closed door that he was leaving the legal documents on the

9    doorstep.  (Transcript at 8:3-8.)

10   According to Mr. Dassa, he was asleep in his home at the time Mr. Pinon left the summons on

11   his doorstep.  (Decl. of Joe Dassa at ¶3.)  Mr. Dassa testified that he never saw Mr. Pinon on February

12   20, 2012 and he did not become aware of the documents on his doorstep until later that morning when

13   he opened the door and saw the documents on the ground.  (Transcript at 27:1-6.)[4]

14   Clearly, either Mr. Pinon or Mr. Dassa has provided the Court with an inaccurate account of

15   what truly occurred.  Based on the divergent accounts, the Court looks to the surveillance evidence in

16   an attempt to understand what actually occurred.  During the evidentiary hearing Defendants presented

17   eleven photographs of still images taken from Mr. Dassa's home surveillance video.  The photographs

18   demonstrate the following key events:

19        •    At 8:07:11 a.m., Mr. Pinon was walking on the driveway as he approached the house.

20        •    At 8:07:23 a.m., Mr. Pinon was standing at the front door and appears to be ringing the

21   _____

22        [3]Mr. Pinon also testified that he had attempted to serve Mr. Dassa on February 17, 2012 and
     February 18, 2012, without success.  (Transcript at 4:16-7:18.)  However, the proofs of service indicate
23   that Mr. Pinon did not receive the summons until February 18, 2012.  (ECF Nos. 4, 5.)  Although the
     Court finds that this inconsistency weighs against Mr. Pinon's credibility, in reaching its ruling the
24   Court need not discuss any attempts to serve Mr. Dassa prior to the actual date of service (i.e., February
     20, 2012).  Moreover, Mr. Pinon's inconsistent testimony does not amount to strong and convincing
25   evidence that the proofs of service are invalid.

26        [4]Plaintiff argues that "[i]t is also interesting how Defendant Dassa knows that current counsel
     filed the instant case when he claims to have no copy of the complaint which would contain such
27   information."  (Pl.'s Opp'n at 5:16-19, ECF No. 9.)  However, Mr. Dassa does not dispute that the
     summons and complaint were left on his doorstep.  Rather, he maintains that he retrieved the documents
28   later that day.  Thus, the fact that Mr. Dassa is aware of the existence of the lawsuit and the identity of
     Plaintiff's counsel does not suggest that Mr. Dassa is engaged in a "pattern and practice of lying to avoid
     service."  (Pl.'s Opp'n at 5:19-20.)

1    doorbell.  The door is closed.

2    •    At 8:08:08 a.m., Mr. Pinon was standing at the front door looking at his clipboard.  The

3          door is closed.

4    •    At 8:08:56 a.m., Mr. Pinon drops documents on the doorstep.  The door is closed.

5    •    At 8:08:57 a.m., Mr. Pinon begins to walk back to his car.

6          The time-stamps found on the surveillance still images are telling.  They demonstrate that Mr.

7    Pinon stood at Mr. Dassa's front door for at least 93 seconds.  Missing, however, are any photographs

8    depicting what occurred between 8:07:23 a.m. and 8:08:08 a.m., and between 8:08:08 a.m. and 8:08:56

9    a.m.

10         The Court expected that Defendant's presentation of the actual surveillance video would clarify

11   what exactly happened during the critical minutes that Mr. Pinon appeared outside Mr. Dassa's home.

12   However, Defendants introduced only a small portion of the video surveillance.   Specifically,

13   Defendants' video only depicts the events occurring from 8:08:53 a.m. to 8:09:07 a.m.  In other words,

14   the video only shows Mr. Pinon dropping the documents at the front door and walking back towards his

15   car.  This video only serves to corroborate Mr. Pinon's testimony.  Missing, however, is the video

16   surveillance footage from the time Mr. Pinon arrived at the door (no later than 8:07:23 a.m.) and the

17   time he placed the documents on the doorstep approximately 90 seconds later.  The fact that Defendants

18   omitted these 90 seconds is compelling.  Had the Court been afforded an opportunity to review the entire

19   sequence of events, the dispute as to whose account is truthful would have been easily resolved.  That

20   Defendants failed to introduce the evidence that they claim constitutes "conclusive evidence" that Mr.

21   Pinon's proofs of service are false leads the Court to conclude that, despite any inconsistencies in Mr.

22   Pinon's testimony, his testimony is more credible than Mr. Dassa's testimony.  *See Errion v. Connell*,

23   236 F.2d 447, 457 (9th Cir. 1956) ("The weight to be given to conflicting testimony [about service of

24   process] is within the discretion of the trial judge who, in this instance, had the parties before him.").

25   This conclusion is supported by Mr. Pinon's statement that he was "110%" confident in his testimony

26   even when faced with the prospect of video surveillance (which he had never seen) potentially

27   portraying the entire incident.  (Transcript at 8:13-22.)

28   / / /

1    Mr. Dassa attempts to explain the lack of complete surveillance footage by claiming that he

2    never recorded the entire sequence because (1) the file size of the full video would have been too large

3    to email to his attorney, and (2) he never thought to maintain the entire recording. (Transcript at 43:22-

4    46:9.)  The Court does not view these reasons as credible.  First, absent any unbiased or expert

5    testimony substantiating Mr. Dassa's claim that the entire video was "too big" to record onto his phone,

6    the Court views this claim as suspect.  Second, Mr. Dassa's claim that he did not think it was necessary

7    to record the entire incident because he is "not an attorney" ignores his own testimony that he called his

8    attorney "immediately" upon finding the legal documents on his doorstep and did not record the footage

9    until a day or two later.  (Transcript at 27:6-7, 45:14-18, 46:4-9.)  Moreover, Mr. Dassa apparently did

10   believe  that it was important to obtain still images at the beginning and middle of Mr. Pinon's visit, and

11   no  credible justification was provided for why he would not also preserve the entire video.

12   In conclusion, because Plaintiff has provided prima facie evidence that process was properly

13   served, and because Defendants have not produced strong and convincing evidence sufficient to

14   overcome Plaintiff's showing, the Court finds that Plaintiff has adequately demonstrated that Defendants

15   J&D Enterprise and Mr. Dassa were personally served on February 20, 2012.[5]  Accordingly, the Court

16   RECOMMENDS that the District Judge consider, in ruling on Defendants' motion to dismiss, that

17   Plaintiff personally served Defendants J&D Enterprise and Mr. Dassa on February 20, 2012.[6]

18   / / /

19   / / /

20

21    [5]Defendants also contend that service was defective because "merely leaving court documents

22   at a doorstep is not sufficient for personal service as a matter of law."  (Defs.' Reply at 4:13-15.)
     However, under the circumstances present here, leaving the summons and complaint on the doorstep
     can indeed constitute valid proper service.  *See Travelers Cas. and Sur. Co. of Am. v. Brenneke*, 551

23   F.3d 1132, 1136 (9th Cir. 2009) ("Sufficient service may be found where there is a good faith effort to
     comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and

24   complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only
     prevented by the defendant's knowing and intentional actions to evade service."); *Errion v. Connell*, 236

25   F.2d 447, 457 (9th Cir. 1956) (finding proper service when sheriff threw the summons through a hole
     in a screen door after defendant ducked behind the door).

26

27    [6]Defendants contend that the complaint should be dismissed under Rule 4(m) and Local Civil
     Rule 41.1 for failure to prosecute this case for eleven months.  However, this argument is not presently

28   before the Magistrate Judge and so it is not addressed in this Report and Recommendation.  The Court
     does note, however, that there is no record of service of the summons and complaint on Defendant Joe
     Willis.

**B.     Sanctions**

Defendants maintain that "it is evident that Plaintiff and his counsel engaged in bad faith conduct by causing to be filed false proofs of service." (Defs.' Mot. to Dismiss at 7:25-27.)  Thus, Defendants seek to recover the sum of $7,000.[7]  However, as discussed above, the Court finds that Plaintiff's proofs of service are valid.  Moreover, even assuming they were not, Plaintiff and his counsel should be entitled to rely on the sworn proofs of service of their registered process server.  Defendants have failed to demonstrate that Plaintiff or his counsel engaged in bad faith.  Accordingly, the Court RECOMMENDS that Defendants' request for sanctions be DENIED.

### III.  CONCLUSION

After a thorough review of the pleadings and evidence presented to the Court and based on the foregoing, the Court hereby RECOMMENDS the following:

1.    In ruling on Defendants' motion to dismiss, the District Judge consider that Plaintiff personally served Defendants J&D Enterprise and Mr. Dassa on February 20, 2012; and

2.    Defendants' request for sanctions be DENIED.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before **June 22, 2012**.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed no later than **June 29, 2012**.  The parties are further advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Smith v. Frank*, 923 F.2d 139, 141 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED:  June 8, 2012

DAVID H. BARTICK
United States Magistrate Judge

---

[7]Defendants lowered their request for sanctions to $4,200 at the time they filed their reply because the motion to dismiss hearing had been taken off calendar.  (Defs.' Reply at 6:16-18.)  However, at the evidentiary hearing Defendants' counsel appeared to requesting the full $7,000 since he had to travel to attend that hearing.  (Transcript at 51:9-15.)